**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

CARRIE GRUBE,                           No. 1:16-cv-00126-LM

              Plaintiff,

        v.

AMAZON.COM, INC.,
SYNCHRONY BANK,

                 Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 2

    A.    Plaintiff Grube's Accounts with Amazon and Synchrony..................... 2

    B.    Password and Other Protections Against Unauthorized In-App Purchases........... 4

    C.    In-App Purchases Disputed by Grube.................................................... 7

        1.    The Purchases Disputed by Grube Were Made From Her Fire Tablet .............................................................................. 7

        2.    Grube Ignored the More Than 70 Purchase-Confirmation Emails or Otherwise Monitor Use of Her Fire Tablet or Activity on Her Account .......................................................... 8

        3.    Grube Told Synchrony, the Better Business Bureau, and Credit Reporting Agencies that She Was a Victim of Fraud ............................. 10

III.   ARGUMENT ................................................................................................... 12

    A.    Summary Judgment Standard .............................................................. 12

    B.    Defendants Are Entitled to Summary Judgment on Grube's Claim Under the New Hampshire Consumer Protection Act .................................... 12

        1.    Legal Standard ....................................................................... 13

        2.    Amazon Provides Robust Features to Protect Against Unauthorized In-App Purchases, and Its Practices Cannot Be Deemed Unfair or Deceptive ...................................................... 13

    C.    Amazon Did Not Breach a Duty of Good Faith and Fair Dealing...................... 16

    D.    Synchrony Is Entitled to Summary Judgment on Grube's Claim Under the New Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act.......................................................................................... 17

        1.    Federal and Utah Law Apply, and Neither Permits Grube's Claim ........ 18

        2.    Grube's Claim Also Fails Under New Hampshire Law ......................... 18

    E.    Grube's Truth-in-Lending-Act Claims Fail as a Matter of Law .......................... 20

        1.    Grube's Claims Based on TILA Timing Requirements Fail .................. 20

            a.    Grube Did Not Provide Written Notice Necessary to Trigger the Timing Requirements of the TILA ........................... 20

            b.    Grube's Claims Are Meritless in Any Event ............................... 21

        2.    Grube's Claim That Synchrony Violated 15 U.S.C. § 1643 Also Fails.......................................................................................... 22

-i-

# TABLE OF CONTENTS
(continued)

**Page**

a.      15 U.S.C. § 1643 Does Not Provide Cardholders a Cause of Action ........................................................................................... 22

b.      The Disputed Charges Were Authorized ..................................... 23

IV.     CONCLUSION ................................................................................................ 25

-ii-

Defendants Amazon.com, Inc. ("Amazon") and Synchrony Bank ("Synchrony") respectfully submit this memorandum of law in support of their motion for summary judgment.

## I.      INTRODUCTION

Plaintiff Carrie Grube claims she was unfairly billed for more than 70 purchases from Amazon's Appstore that were charged to her Amazon-branded credit card issued by Synchrony. Grube initially complained to Synchrony that she was the victim of fraud by some stranger.  But investigation of the charges showed that the disputed "in-app purchases" were made from, and downloaded to, one of her Kindle Fire tablets by someone who had access to her device, knowledge of her password, and familiarity with the manner in which purchases could be made on the device.  No remote hacker would have been able to use or benefit from the in-app items that were purchased and would therefore have no incentive to make the purchases.  Accordingly, Synchrony denied Grube's contrived claim of fraud and declined to credit her for the disputed charges.

In this action, Grube now contends that Amazon fraudulently induces children to make in-app purchases without parental authorization and that Synchrony was obligated to reverse the charges and failed to comply with credit-dispute regulations.  In stark contrast to Grube's allegations, Amazon provides robust protections against unauthorized purchases.  With respect to in-app purchases such as those at issue in this case, at the time of the first purchase on a device, Amazon requires entry of the account holder's confidential Amazon password and an affirmative election by the account holder whether to require entry of a password for all subsequent in-app purchases.  Even for those customers who forgo the protection of password entry for all future purchases, entry of a password is still required for all high-priced items, such as many of the disputed purchases here.  Further, in order to alert account holders to the fact that a purchase had been made using their credit card, Amazon immediately sends a confirmation of each purchase to the email address designated by the account holder.

These safeguards worked as intended here.  The undisputed evidence demonstrates that Grube was presented with the choice whether to require entry of her unique password for all transactions, and *even if* she voluntarily elected to disable this password requirement, a significant majority of the disputed purchases would still have required authorization through successful password entry because of additional password protections Amazon has in place. Moreover, Grube concedes that she received immediate notification of each of the purchases, but she "explains" that she chose not to look at the more than 70 confirmatory emails alerting her to the purchases that she disputes.  Defendants cannot be liable for charges incurred under these circumstances, where the account holder decided to share her purchase-enabled device with others, failed to supervise activity on that device, ignored contemporaneous emails alerting her to the purchases, and failed to take advantage of other tools to monitor or limit activity on her account.

Based on the material facts, none of which is in dispute, the Court should conclude that Grube is responsible for the disputed charges and that Synchrony fully complied with rules governing credit disputes.  Summary judgment should be entered in favor of Defendants.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.     Plaintiff Grube's Accounts with Amazon and Synchrony**

1.      Amazon's Appstore offers games and other applications ("apps") for download on mobile devices such as tablets and smartphones.  Declaration of Adam Luebbers ("Luebbers Decl.") ¶ 2.  Certain apps allow customers to make "in-app purchases" of digital content like gems, coins, and virtual weapons for use in a game or of other features to enhance an app.  *Id.*

2.      Creation of an account with Amazon requires a customer to provide an email address for the account and to create a password.  Luebbers Decl. ¶ 6.  To make purchases, the customer must set up a payment method, such as a credit card.  *Id.*

2

3.      Grube established an account with Amazon in 2003 using the email address carrie_lussier@yahoo.com, and she maintained this account, linked to that email address, at all times relevant to this lawsuit.[1] Luebbers Decl. ¶ 9; *see also* C. Grube Tr. 9:3–11.

4.      In late 2014, Grube purchased two Amazon Fire HD tablet devices ("Fire Tablets") for use by her two children.  C. Grube Tr. 19–20; Compl. (Dkt. 1) ¶ 6.  Fire Tablets allow users to watch movies, read books, listen to music, browse the internet, and—as relevant in this case—download and play apps from the Amazon Appstore.  Luebbers Decl. ¶ 10.

5.      Prior to making any purchase through a Fire Tablet, Amazon account holders must first associate the device with their Amazon account and payment method.  Luebbers Decl. ¶ 7.  All use of, and customer purchases through, the Amazon Appstore are subject to the Amazon Appstore for Android Terms of Use and Amazon's Conditions of Use.  Luebbers Decl. ¶ 8 & Exs. F, G.

6.      Grube acknowledges that, when setting up her account, she reviewed and agreed to the Conditions of Use.  C. Grube Tr. 128:14–129:1.  The Conditions of Use in effect when the purchases at issue in this action were made, include the following term:

> If you use any Amazon Service, you are responsible for maintaining the confidentiality of your account and password and for restricting access to your computer, and you agree to accept responsibility for all activities that occur under your account or password. Amazon does sell products for children, but it sells them to adults, who can purchase with a credit card or other permitted payment method. If you are under 18, you may use the Amazon Services only with involvement of a parent or guardian.

Luebbers Decl. ¶ 8 & Ex. G ("Your Account").  Grube concedes that she agreed to this term specifically.  C. Grube Tr. 129:2–18.

7.      Grube understood that she "should keep the password secure" and that "if somebody had access to [her] password and other information about [her] account, they could

---

[1] Lussier is Grube's maiden name.  C. Grube Tr. at 24:14–16.  Excerpts of deposition transcripts are attached to the Declaration of Harry H. Schneider, Jr. ("Schneider Decl.") (Ex A contains excerpts from Plaintiff Carrie Grube's deposition; Ex. B contains excerpts from Peter Grube's (her husband's) deposition.)

make purchases which would be charged to [her] credit card." C. Grube Tr. 7:21–23, 8:11–15. Grube also understood "from the outset that the [Fire Tablet] devices were capable of transacting a purchase from Amazon.com." C. Grube Tr. 37:11–14.

8. For the purchases at issue in this lawsuit, the payment method linked to the Fire Tablets was Grube's Amazon-branded credit card issued by Synchrony (an "Amazon.com Store Card" that is referred to below as the "Credit Card Account").[2] Luebbers Decl. ¶ 10; Declaration of Martha Koehler ("Koehler Decl.") ¶¶ 3,6. Grube's Credit Card Account was opened in November 2013, when she completed an online application. Koehler Decl. ¶ 6 & B.

9. Before clicking the "submit" button to complete her application, Grube had to check a box indicating that she had read and agreed to the Terms and Conditions for the account ("Credit Card Agreement"). Koehler Decl. ¶ 6. The Credit Card Agreement provides that (1) "*[y]ou may not allow anyone else to use your account[; i]f you do, . . . you will be responsible for paying all charges resulting from their transactions*"; and (2) "you will be responsible for all use [of the Credit Card Account] by anyone you give your card to or allow to use your account." Koehler Decl. Ex. B (emphasis added).

## B.  Password and Other Protections Against Unauthorized In-App Purchases

10. Most Amazon customers are used to, and prefer, a seamless, "friction-free" purchase experience. Luebbers Decl. ¶ 3. As a result, Amazon does not automatically require a password for all in-app purchases. *Id.* Instead Amazon provides numerous features to protect against unauthorized purchases, while taking into account the majority of customers' preference for seamless purchasing. Luebbers Decl. ¶¶ 3–5.

11. When Grube purchased the Fire Tablets in late 2014, all of the following protections, among others, were in place to guard against unauthorized in-app purchases:

> a.    <u>First-Time Purchase Prompt</u>: To complete the first in-app purchase on a Fire Tablet, a user must successfully enter the Amazon password associated with the device and

---

[2] Synchrony is a federal savings association with its principal place of business in Utah. Koehler Decl. ¶ 2. Synchrony was formerly known as GE Capital Retail Bank. Koehler Decl. ¶ 2 & Ex. B.

make an affirmative choice whether to require a password for all future in-app purchases.
Luebbers Decl. ¶ 4.a & Ex. A.  (See Figure below.)  If the account holder chooses to require a
password for future purchases, the device turns on the Parental Controls feature (if not already
enabled).  Luebbers Decl. ¶ 4.a.  Unless a Parental Controls password is already set for the
device, the account holder must create a Parental Controls password of at least four characters to
complete the first in-app purchase.  Luebbers Decl. ¶ 4.a & Ex. A.  With Parental Controls
enabled, all in-app purchase attempts on the device require a password.  Luebbers Decl. ¶ 4.a.

**Figure: First-Time Purchase Prompt**



    b. <u>Parental Controls</u>: An account holder also can enable Parental Controls at
any time by accessing device settings, tapping Parental Controls, turning the setting to "On," and
successfully entering the account password.  Luebbers Decl. ¶ 4.b.

    c. <u>Disable In-App Purchasing</u>: Similarly, a customer can disable in-app
purchasing on a device altogether by accessing the Parental Controls menu through settings and
unchecking the box for "Allow In-App Purchasing."  Luebbers Decl. ¶ 4.c.

<div align="center">5</div>

d.   <u>High-Price Password</u>: Even with Parental Controls disabled, all in-app purchases of $19.99 or higher require the account holder's password.  Luebbers Decl. ¶ 4.d.

e.   <u>Password for Specified Apps</u>: If the Parental Controls setting is not turned on, Amazon still requires a password for in-app purchases within specified apps identified by third-party developers as designed for use by children and apps that experienced a high-refund rate for in-app purchases.  Luebbers Decl. ¶ 4.e.  For those apps, once the customer enters a password for an in-app purchase, a 15-minute purchasing window opens in which purchases can be made without additional password entry.  *Id.*  Within this window, however, a password is still required for in-app purchases of items $19.99 or higher.  *Id.*

f.   <u>High-Frequency Password</u>: Even with Parental Controls disabled, password entry is necessary upon a customer's second attempt to make an in-app purchase within a five-minute period.  Luebbers Decl. ¶ 4.f.  Correctly inputting the account password opens a 60-minute purchasing window (here too a password is required for purchases within the window priced at $19.99 and up).  *Id.*

g.   <u>Kindle FreeTime</u>: Amazon Kindle Fire tablet devices, including the tablets purchased by Grube, include Kindle FreeTime software.  Luebbers Decl. ¶ 4.g.  FreeTime allows parents to control tablet usage by children, including the ability to control what apps, books, videos, or other content a child can access, and to set time limits for use of the device.  *Id.*  Within FreeTime, all in-app purchasing is disabled.  *Id.*

h.   <u>Notices and Information About Parental Controls</u>: Amazon informs customers about in-app purchasing and Parental Controls in many ways.  For example, information is available on: (i) the Amazon.com website, *see, e.g.*, Luebbers Decl. Ex. B ("In-App Purchasing 101" and "Set Up Parental Controls"); (ii) "app detail pages" with information about an app and the button to download it, Luebbers Decl. Ex. C ("NOTE: This app contains in-app purchasing, which allows you to buy items within the app using actual money.  On Amazon devices, you can configure parental controls from the device Settings menu by selecting Parental

6

Controls."); and (iii) purchase-confirmation popup windows, which indicate whether Parental Controls are on or off and provide a link to change the setting, *see* Luebbers Decl. Ex. D.

          i.      <u>Immediate Order-Confirmation Emails</u>: *Each* in-app purchase results in delivery of an immediate order-confirmation email to the account holder.  Luebbers Decl. ¶ 4.i. The email is sent to the address associated with the Amazon account and indicates item purchased, price paid, and the fact that it was a purchase from the Amazon Appstore. Luebbers Decl. ¶ 4.i & Ex. E.  Thus, even if an account holder parent did not approve a child's in-app purchase, the parent would immediately receive an order-confirmation email.  Luebbers Decl. ¶ 4.i.  If the child made five in-app purchases, the parent would receive five separate emails.  *Id.*

**C.    In-App Purchases Disputed by Grube**

    **1.    The Purchases Disputed by Grube Were Made From Her Fire Tablet**

    12.    Grube was aware of in-app purchasing and acknowledges that after purchasing the Fire Tablets she "occasionally made small game purchases for her children."  Compl. ¶ 10; *see also* C. Grube Tr. 8:11-15, 36:2-10, 80:9–83:22.

    13.    Grube's Complaint alleges that $2,752.69 in in-app purchases charged to her Amazon Account (and the Credit Card Account) were "fraudulent."  Compl. ¶ 17.

    14.    In her deposition, Grube testified that she reviewed a printout of Amazon digital orders and circled charges that she did not authorize.  C. Grube Tr. 147:11–12.  In this manner, Grube identified 108 in-app purchases that she challenges.  Schneider Decl. ¶ 4 & Ex. C; Luebbers Decl. Ex. H.

    15.    Amazon's Appstore transaction records establish the following:

- 36 of the 108 challenged orders identified by Grube, totaling $920.64, were not billed to Grube's Credit Card Account due to a problem with the payment method (e.g., exceeding her credit limit).

- Disregarding the 36 "Unbilled Challenged Orders" leaves 72 "Disputed Charges" identified by Grube, totaling $2,157.28.[3]

- All 72 of the Disputed Charges were made from, and downloaded to, one of the two Fire Tablets that Grube purchased.  In other words, the Disputed Charges were not purchases made on a third party's device that had been linked to the Credit Card Account.  (All 36 Unbilled Challenged Orders were also made from the same Fire Tablet owned by Grube.)

- Even if Grube chose not to require a password for in-app purchases when presented with the first-time purchase prompt on the device, 52 of the 72 Disputed Charges would have required successful entry of a password.[4]

- If Grube had opted to require a password for in-app purchases (or otherwise set Parental Controls) prior to the first Disputed Charge on January 22, 2015, all 72 Disputed Charges would have required successful entry of a password.

*See* Luebbers Decl. ¶¶ 12–16 & Ex. H.

### 2. Grube Ignored the More Than 70 Purchase-Confirmation Emails or Otherwise Monitor Use of Her Fire Tablet or Activity on Her Account

16.    For each of the 72 Disputed Charges (and the 36 Unbilled Challenged Orders), an immediate, automated order-confirmation email would have been sent to carrie_lussier@yahoo.com, the email account associated with Grube's Amazon account linked to her Fire Tablets.  Luebbers Decl. ¶ 17; Schneider Decl. Ex. D.

17.    Grube understood that Amazon sends order-confirmation emails to a customer's email account on file and that the purpose of such emails is "to notify the account holder that a transaction had been consummated[,] . . . . that money had changed hands[, and that the account holder's] credit card had been charged."  C. Grube Tr. 90:13–91:9.

18.    Grube testified, however, that she did not check the email account she had provided Amazon and did not read the 72 purchase-confirmation emails for the Disputed

---

[3] To avoid unnecessary complexity, this Memorandum also uses the term "Disputed Charges" below when referring to the generalized set of charges Grube disputed with Synchrony, even though at that time she did not identify which specific purchases she disputed.

[4] Grube testified she didn't remember whether she choose to require a password for future purchases.  C. Grube Tr. 135:17–136:12.

Charges.  C. Grube Tr. 93:12–21.  Screenshots of Grube's Yahoo! email inbox prove that she received all 72 confirmation emails for the Disputed Charges.  Schneider Decl. Ex. D.

19.     She also received a confirmation email for each of the 36 Unbilled Challenged Orders with the subject line, "Important Notice: Your Amazon Order" alerting her that there was a problem with her payment method.  Schneider Decl. Ex. D.

20.     Grube never informed Amazon she wanted to link her account to her current primary email address rather than carrie_lussier@yahoo.com.  C. Grube Tr. 67:13–68:8.

21.     Amazon customers can also review their in-app order history at any time on Amazon.com by navigating to "Your Orders" and selecting "Digital Orders" from the categories listed at the top of the page.  Luebbers Decl. ¶ 18.  Grube testified, however, that she never reviewed her digital purchase history during the period when the Disputed Charges were made.  *See* C. Grube Tr. 150:12–151:6.

22.     In addition to reviewing monthly credit card statements to see all transactions for a billing period, Synchrony customers with an Amazon-branded credit card account like Grube can, at any time, review their account online at www.syncbank.com/amazon to see charges that have posted to the account.  Koehler Decl. ¶ 5.  Customers can also sign up for email or text alerts for each time their credit card is charged.  *Id.*

23.     Synchrony credit card statements received and reviewed by Grube in the months preceding the Disputed Charges each conspicuously included boxed and bold messages at the top of the first and third pages informing customers of these features.  Koehler Decl. Ex. A; C. Grube Tr. 31:6–9, 32:8–33:8.  For example:

- "Manage your account on your smartphone 24/7"

- "Check your balance anytime, anywhere"

- "Register for eBill, account alerts and more"

- "Sign up for text alerts and get messages when . . . [y]our store card has been charged"

9

Koehler Decl. Ex. A (five statements sent September 2014 through January 2015).

24.     Grube failed to take advantage of any of these means to monitor activity on her account, but instead contends that she first learned of the Disputed Charges when reviewing her February 2015 statement for the Credit Card Account.  C. Grube Tr. 13:11–20; Compl. ¶¶ 17–18. Had she done so—or had she supervised her children's use of her Fire Tablets—Grube would have quickly learned that the Disputed Charges were almost certainly made by her son.[5]

25.     Of the 72 Disputed Charges ($2,157.28), 45 were purchases totaling $1,891.55 made within two apps of interest to Grube's son, who was then aged nine: MyNBA2K15 and WWE SuperCard (professional wresting app).  Luebbers Decl. ¶ 19 & Ex. H; C. Grube Tr. 103:1–12 (acknowledging her son is interested in wresting and responding "no" when asked if she "can . . . think of anyone else who would have made [the purchases]"); P. Grube Tr. 32:14–20 (Grube's son had an interest in WWE professional wresting items); P. Grube Tr. 41:12–17 (acknowledging son's interest in NBA basketball); C. Grube Tr. 66:14–16, 110:20.

26.     Although her Complaint repeatedly refers to the Disputed Charges as "fraudulent," *see, e.g.*, Compl. ¶¶ 17–18, 25, 29, Grube conceded in deposition that the Disputed Charges were most likely made by her children.  C. Grube Tr. 137:1–23, 140:6–8.

27.     Grube testified that the password she chose for purchases on her son's Fire Tablet was the 4-digit number corresponding to his birthdate.  C. Grube Tr. 59:16–60:12; *see also* P. Grube Tr. 52:7–10 ("Q. . . . Would it surprise you to learn that the password was [mmdd]? A. That's his birthday. Yes.").

### 3.     Grube Told Synchrony, the Better Business Bureau, and Credit Reporting Agencies that She Was a Victim of Fraud

28.     On February 21, 2015, Grube called Synchrony to dispute charges on her credit card statement.  Koehler Decl. ¶ 7.  She told a Synchrony agent that she hadn't used the card since December 30, 2014, even though she concedes that she authorized several app and in-app

---

[5] For purposes of the Motion, Defendants assume the Disputed Charges were made without Grube's knowledge.

purchases that were made after that date and before the first Disputed Charge on January 22. *See* Schneider Decl. Ex. E, at 2:14–15; Koehler Decl. ¶ 7; Compl. ¶ 10.

29.     On the call, Grube expressed concern about potential identity theft and asked what the charges were for that she was disputing.  Schneider Decl. Ex. F, at 5:12–15, 7: 23–25, Ex. E, at 3:3.  The Synchrony agent told Grube: "A lot of them look like they're digital services through Amazon.  I'm not for sure.  I'm not Amazon.  I'm just a bank. . . .  Amazon will probably be able to enlighten you as far as directly what it is.  I mean, obviously, we're not Amazon . . . .  So it would probably be something like on a mobile device or an iPad or a Kindle or something like that."  Schneider Decl. Ex. E, at 3:7–9, 4:8–13.  Despite this, Grube did not contact Amazon about the Disputed Charges until nearly nine months later.  Luebbers Decl. ¶ 20.

30.     Grube only communicated with Synchrony regarding the Disputed Charges over the phone; she did not send Synchrony any written communication regarding the charges. Koehler Decl. ¶ 8; s*ee also* C. Grube Tr. 16:21–17:5, 65:11–21.

31.     After investigating the Disputed Charges, Synchrony determined that the charges were for digital downloads that Grube had authorized because she released her credit card information to one or more third parties by linking her card to Fire Tablets she provided to third parties.  Koehler Decl. ¶ 10.  As a result, Synchrony mailed Grube a letter on April 24, 2015 informing her that her fraud claim had been denied for that reason.  Koehler Decl. ¶ 11 & Ex. C.

32.     Grube called Synchrony again on June 1, 2015, and reasserted the same fraud claim.  Koehler Decl. ¶ 13.  Synchrony reinvestigated and reached the same conclusion, and on August 16, 2015, sent a letter to Grube again rejecting her fraud claim because she "released [her] account information to a third party."  Koehler Decl. ¶¶ 15–16 & Ex. E.

33.     After Grube filed a complaint with the Better Business Bureau ("BBB") in which she contended that the same Disputed Charges were "fraudulent," Synchrony opened a fraud investigation for the third time.  Koehler Decl. ¶¶ 17–18 & Ex. F.

34.     Synchrony confirmed with Amazon that charges disputed by Grube were downloaded to one or more Fire Tablets labeled "Carrie's Fire," and then Synchrony conveyed

24976-0852/135160459.7

that information to Grube in a November 5, 2015 letter informing her that it had again denied her fraud claim.  Koehler Decl. ¶¶ 18–19 & Ex. H.  In a December 15, 2015 letter to BBB (copying Grube), Synchrony reported that Amazon had confirmed that charges in question were downloads to Grube's device, that the purchases "may have been downloaded by someone that was given permissible use of the device," and that Synchrony "cannot deem the charges as being fraudulent or unauthorized based on our investigation."  Koehler Decl. ¶ 18 & Ex. G.

35.    From September to November 2015, Synchrony responded to three communications from consumer reporting agencies indicating Grube contended she "was not liable for the account" and was the victim of "identity fraud."  Koehler Decl. ¶ 20 & Ex. I.

### III.    ARGUMENT

### A.    Summary Judgment Standard

"Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61 (1st Cir. 2016).  To defeat summary judgment, the non-moving party must "produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe."  *Xiaoyan Tang v. Citizens Bank*, N.A., 821 F.3d 206, 215 (1st Cir. 2016).  Summary judgment is appropriate where "the evidence is merely colorable, . . . is not significantly probative," or where "the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

### B.    Defendants Are Entitled to Summary Judgment on Grube's Claim Under the New Hampshire Consumer Protection Act

Grube contends that Amazon committed an "unfair or deceptive act or practice" under the New Hampshire Consumer Protection Act, RSA 358-A:2 (the "CPA"), by "induc[ing] and enabl[ing] children to make purchases without authorization."[6]  Compl. ¶ 62.  This claim fails

---

[6] Although the Complaint refers to "Defendants'" as having violated the CPA, Grube's allegations are directed solely at the manner in which in-app items are sold through Amazon's Appstore.  Compl. ¶¶ 61-63.  Synchrony is a credit card issuer that has no involvement in how in-app purchases are made, Koehler Decl. ¶ 3, and thus Synchrony

because Amazon's practices do not satisfy the "rascality" test used to determine whether conduct violates the CPA, and the practices have been validated by the Federal Trade Commission and the U.S. District Court for the Western District of Washington.[7]

### 1. Legal Standard

The CPA specifically prohibits sixteen categories of "unfair or deceptive" conduct and, while this list is not exhaustive, "[f]or conduct not particularized by the CPA to qualify as unfair or deceptive, it must be of the same type as that proscribed in the enumerated categories." *State v. Sideris*, 157 N.H. 258, 262 (2008); RSA 358-A:2(I)-(XVI).  To analyze whether non-enumerated conduct is "unfair or deceptive," courts employ the "rascality" test, which considers whether the conduct "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  *Beer v. Bennett*, 160 N.H. 166, 171 (2010).  Conduct that is clearly disclosed prior to an alleged injury is not actionable under this test. *L'Esperance v. HSBC Consumer Lending, Inc.*, No. 11-CV-555-LM, 2012 WL 2122164, at *21 (D.N.H. June 12, 2012) (no actionable allegation of deception where terms were "plainly stated in . . . two agreements").

### 2. Amazon Provides Robust Features to Protect Against Unauthorized In-App Purchases, and Its Practices Cannot Be Deemed Unfair or Deceptive

Grube does not allege that Amazon violated an enumerated category of unfair or deceptive conduct because none resembles the conduct in this case.  *See* Compl. ¶¶ 58–69; RSA 358-A:2.  Amazon's practices stand in stark contrast to the type of conduct that can satisfy the

---

is entitled to summary judgment on Grube's CPA claim.  In any event, Synchrony is exempt from liability because its practices are regulated by the Office of the Comptroller of the Currency.  *See* RSA 358-A:3(I); *Sullivan v. J.P. Morgan Chase & Co.*, 2014 WL 10383686, *2 (N.H. Super. Sept. 23, 2014); Koehler Decl. ¶ 2.

[7] Amazon's Conditions of Use specify that Washington law applies.  Luebbers Decl. Ex. G.  Under either Washington or New Hampshire law, however, the result is the same.  *See Steinke v. Sungard Fin. Sys., Inc.*, 121 F.3d 763, 775 (1st Cir. 1997) ("We need not resolve [the choice-of-law] issue, however, because 'the outcome is the same under the substantive law of either jurisdiction.'").  Under Washington law, conduct is "unfair or deceptive" if it is "likely to mislead a 'reasonable' or 'ordinary' consumer."  *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. App. 2012).  And like the New Hampshire CPA, courts apply Washington's CPA with reference to application of the FTC Act.  *See* RCW 19.86.920; *State v. LG Elecs., Inc.*, 340 P.3d 915, 920 (Wash. App. 2014), *aff'd*, 375 P.3d 636 (Wash. 2016).  As discussed in this section, Amazon's practices are not likely to mislead a reasonable or ordinary consumer, and they conform to the FTC Act, as acknowledged by the FTC and federal precedent.

13

rascality test, which typically involves deliberate deception or other unethical conduct that is "harmful for commerce." *See Beer*, 160 N.H. at 171–72 ("'It would be harmful for commerce in New Hampshire to condone such unethical and unscrupulous activity.'") (quoting *State v. Moran*, 151 N.H. 450, 454 (2004); *see also id.* (rascality test satisfied where defendant made "representations, knowing he lacked sufficient knowledge to substantiate them, to induce the plaintiff's purchase."); *Sideris*, 157 N.H. at 262 (rascality test satisfied by "knowingly entering into a contract to perform a service, taking [plaintiff's] money for that service, and, despite [plaintiff's] repeated requests, knowingly failing to provide the service and knowingly failing to return the money").

By contrast, in this case Grube contends that Amazon engaged in unfair and deceptive conduct despite all of the following:

- Grube was well aware that her children could make digital purchases on her Fire Tablets and in fact concedes she approved several in-app purchases. Statement of Facts ¶ 12.

- To complete the first in-app purchase on her device, Grube had to enter her Amazon password and affirmatively choose whether to require a password for future in-app purchases. Statement of Facts ¶ 11.a. She cannot dispute that Amazon gave her this election. Statement of Facts ¶ 15 n.4.

- Grube also could have enabled Parental Controls at any time through the settings page on her Fire Tablets, an option that Amazon informs customers of in many different ways. Statement of Facts ¶¶ 11.b, 11.h.

- Even if Grube never enabled Parental Controls, password entry would still have been required for 52 of her 72 Disputed Charges as a result of other Amazon password protections in place. Statement of Facts ¶¶ 11.d, 11.e, 11.f, 15.

- Grube could have disabled in-app purchasing entirely or used Kindle FreeTime to limit her children's activity on the Fire Tablets. Statement of Facts ¶¶ 11.c, 11.g.

- After *each* Disputed Charge, Amazon sent an immediate purchase-confirmation email to the email address provided by Grube. Statement of Facts ¶ 11.i, 16–19.

14

- Grube also could have monitored purchase activity on her Amazon account at any time on the Amazon.com website.[8]  Statement of Facts ¶ 21.

- Amazon's Conditions of Use required Grube to maintain the confidentiality of her password and informed her she was responsible for activities under her account and password, which she understood.  Statement of Facts ¶¶ 5–7.

Amazon's provision of these many protections—designed to prevent unauthorized purchases—is precisely the opposite of the type of deceptive or unfair practices that would support a CPA claim and Grube's allegations that Amazon "intentionally, knowingly, willfully, and fraudulently induced and enabled children to make purchases without authorization."  *See* Compl. ¶ 62.

Nor are Amazon's practices harmful for commerce.  To the contrary, *to require more* than these robust protections *would harm commerce* by introducing additional friction to complete purchases in an area of commerce where most customers desire seamless purchasing.  *See* Luebbers Decl. ¶ 3.  Read in its *best* light, Grube's claim is that Amazon committed deceptive and unfair practices because it (1) did not prevent her nine-year-old son from guessing a poorly chosen 4-digit password (i.e., his birthday) and (2) did not compel Grube to (a) check her email with more than 100 purchase confirmations, (b) update Amazon to provide her preferred email address, (c) monitor the activity on her Amazon account or Credit Card Account, or (d) exercise even minimal supervision over her son's gaming activity.  To protect against purchases under such circumstances would require internet retailers to obtain additional customer verification of each purchase beyond successful password entry.  The CPA does not require such extraordinary measures, which would greatly harm internet commerce.

This conclusion is further supported by the fact that Grube challenges a billing practice that both the FTC and the U.S. District Court for the Western District of Washington have acknowledged complies with Section 5 of the Federal Trade Commission Act ( the "FTC Act"), the federal analog to the CPA.  When applying the CPA's rascality test, courts are "guided by the interpretation and construction given Section 5(a)(1) of the Federal Trade Commission Act . . .

---

[8] Similarly, Grube could have monitored activity on her Credit Card Account on the Synchrony website or by signing up for email or text alerts of charges.  Statement of Facts ¶¶ 22–23.

by the Federal Trade Commission and the federal courts." RSA 358-A:13; s*ee also Moran*, 151 N.H. at 452–53. In *FTC v. Amazon*, No. 2:14-cv-01038-JCC (W.D. Wash.), the FTC challenged Amazon's password protocols and billing practices for in-app purchases for the period *prior to June 3, 2014*.[9] Both the FTC and the Court acknowledged that Amazon's practices comply with the FTC Act after that date, which is when Amazon introduced the first-time purchase password prompt requiring an affirmative election whether to require a password for future in-app purchases. Schneider Decl. Ex. G, at 22 (Summary Judgment Order: "[U]sers were clearly informed both about the existence of in-app purchases and the scope of their consent by virtue of the revised in-app purchase prompt on June 3, 2014."); *see also* Schneider Decl. Ex. G, at 7–8; Statement of Facts ¶ 11.a.

Amazon's practices would not "raise an eyebrow of someone inured to the rough and tumble of the world of commerce" and are not "harmful for commerce in New Hampshire[.]" *See Beer*, 160 N.H. at 171. Thus, Grube's CPA claim should be dismissed.

## C.    Amazon Did Not Breach a Duty of Good Faith and Fair Dealing

Grube contends that "Amazon engaged in conduct without good faith and for the purpose of depriving Plaintiff of rights and benefits under the[ir] contract." Compl. ¶ 82. The contract governing Grube's use of Amazon's services and her account, the Conditions of Use, provides that "the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon." Luebbers Decl. Ex. G ("Applicable Law").

Under Washington law, "there is no 'free-floating' duty of good faith and fair dealing that is unattached to an existing contract." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). Rather, "[t]he duty exists only in relation to performance of a specific contract term," *id*., and cannot be used to "inject substantive terms into the parties' contract." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (internal quotation marks omitted).

---

[9] The FTC also challenged practices specific to Amazon's first-generation Kindle Fire device, which is not at issue here (i.e., Grube's Fire Tablets are fourth-generation devices). Schneider Decl. Ex. G, at 22; Luebbers Decl. ¶ 10.

"As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Id.*

Grube alleges that Amazon "violate[d] the concept of good faith and fair dealing" by "lur[ing] children to download bait applications and games and then, spend vast sums on 'game currency' without parental knowledge or permission." Compl. ¶ 83. Her claim fails as a matter of law. *First*, the basis of the allegation is false for the reasons discussed above. Amazon does not "lure children" to make unauthorized purchases but rather provides account holders with many robust password and other protections to guard against unauthorized purchases. *See, e.g.*, Statement of Facts ¶¶ 11.a–11.i. *Second*, Grube fails to identify any contractual provision that Amazon failed to perform in good faith. A violation of the "*concept* of good faith and fair dealing" without reference to a specific contract term cannot support a claim. *See* Compl. ¶ 83 (emphasis added); *Keystone*, 94 P.3d at 949. *Third*, Amazon's Conditions of Use provides that although "Amazon does sell products for children, . . . it sells them to adults who can purchase with a credit card or other permitted payment method"; the terms also require Grube to "accept responsibility for all activities that occur under [her] account or password." Luebbers Decl. ¶ 8 & Ex. G ("Your Account"). Amazon cannot breach the duty of good faith and fair dealing by "stand[ing] on its rights to require performance" of terms Grube accepted. *See Badgett*, 807 P.2d at 360. Grube's good-faith-and-fair-dealing claim should, therefore, be dismissed.

**D.      Synchrony Is Entitled to Summary Judgment on Grube's Claim Under the New Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act**

Grube alleges that Synchrony violated a provision of the New Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act ("UDUCPA"), RSA 358-C:3(VII), by including the Disputed Charges in her billing statements, which she alleges constitute "material false misrepresentations as to the character and amount of [Grube's] debt." Compl. ¶¶ 72–74.

Grube's claim fails because federal and Utah law apply, and she cannot make out a claim under either.  In any event, her claim also fails as a matter of law under New Hampshire law.[10]

### 1. Federal and Utah Law Apply, and Neither Permits Grube's Claim

Synchrony is headquartered in Utah, and its account agreement with Grube provides that "this Agreement and your account are governed by federal law and, to the extent state law applies, the laws of Utah without regard to its conflicts of law principles."  Koehler Decl. ¶ 2 & Ex. B.  Because Grube's claim concerns her account (i.e., her billing statements) and Utah "bears a significant relationship" to the account agreement, the parties' choice-of-law clause applies.  *See Hobin v. Coldwell Banker Residential Affiliates, Inc.*, 144 N.H. 626, 628 (2000).

Under the federal Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692–1692p, a creditor such as Synchrony in this case is not a "debt collector" under the Act.  *See* 15 U.S.C. § 1692(a)(6)(F); *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) ("Unlike debt collectors, creditors typically are not subject to the FDCPA.") (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)).  Thus, the FDCPA provision governing debt collection activity that is analogous to RSA 358-C:3(VII) does not apply to Synchrony in this case.  *See* 15 U.S.C. § 1692e.  Nor can Grube make out a claim under Utah's debt-collection laws, which do not include a provision analogous to the UDUCPA.  *See, e.g.*, Utah Code Ann., tit. 12 ("Collection Agencies").

### 2. Grube's Claim Also Fails Under New Hampshire Law

Even if New Hampshire law applies, Grube's UDUCPA claim fails as a matter of law.  She alleges that, by sending billing statements listing the Disputed Charges as due, Synchrony made a "material false representation . . . of the character, extent or amount of the debt."  Compl. ¶ 73; RSA 358-C:3(VII).  Grube's claim fails because the billing statements did not contain "false" information, and Synchrony did not knowingly make any false statements.

---

[10] Although Grube's Complaint alleges that "Defendants" violated the UDUCPA, her allegations pertain only to billing statements issued by Synchrony.  Compl. ¶¶ 71, 73.

The fact that Grube disputed her liability for the charges identified in her billing statements does not make the statements "false."  In *Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59, 64–65 (D.N.H. 2014), for example, the court granted summary judgment in favor of defendants on a UDUCPA claim based on alleged misrepresentations about the amount of debt. That the plaintiff disputed the debt at the time of the representations—she claimed not to have opened the account in question—was irrelevant to the analysis.  *See id.* at 62–65.

Nor can Grube credibly claim she was misled by inclusion of the Disputed Charges on her billing statement while Synchrony investigated her fraud claim.  Upon contacting Synchrony to dispute the charges on February 21, 2015, Grube was specifically told she would continue to receive billing statements showing the entire amount of the debt while her claim was investigated.  Schneider Decl. Ex. F, at 7:9–20.  Her credit card statement informed her of the same: "The charge in question may remain on your statement, and we may continue to charge you interest on that amount.  But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount."  Koehler Decl. Ex. A.  Grube's account agreement with Synchrony contains a similar notice.  Koehler Decl. Ex. B.  Courts have rejected similar arguments under the FDCPA.  *See, e.g.*, *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 913 (8th Cir. 2014) (failure to note that debt was disputed was not "false, deceptive, or misleading" where recipient "was already aware that the debt was disputed."); *Schwantes v. Monco Law Offices, SC*, No. 13-CV-02382 MJD/TNL, 2014 WL 4163024, at *2 (D. Minn. Aug. 21, 2014) ("failure to communicate that a disputed debt is disputed" was not "false, deceptive or misleading" where the disputed nature of the debt was "inherent in [defendant's] response to Equifax's dispute notification.").  Because the billing statements Synchrony sent to Grube were not "false" and had no capacity to mislead or deceive her, Grube's UDUCPA claim should also be dismissed if New Hampshire law is applied.

The Court should reach the same result even if the billing statements are deemed to include a material false representation because the UDUCPA provides that "a debt collector shall not be held liable . . .  for a violation if . . . [t]he violation was not intentional and resulted from a

bona fide error or mistake notwithstanding the maintenance of procedures reasonably adapted to avoid any such error or mistake."  RSA 358-C:4(II).  When a customer disputes a charge, Synchrony places the individual transaction amounts in question into dispute, reports the account as lost or stolen, issues a new account number, and initiates a fraud investigation.  Koehler Decl. ¶ 9.  Here, Grube contacted Synchrony (and later the BBB and credit reporting agencies) and claimed she was the victim of fraud by a stranger.  Statement of Facts ¶¶ 28–35.  Synchrony's investigation, instead revealed that the Disputed Charges were digital purchases made on, and downloaded to, Grube's Fire Tablet.  Koehler Decl. ¶¶ 10, 18.  Synchrony therefore concluded that the charges were not "fraudulent" as Grube alleged, but instead had been made with her authorization.  Koehler Decl. ¶¶ 10, 16, 18.  Under these circumstances, even if Synchrony's representations about Grube's debt could be deemed "false," they would be the result of a bona fide error or mistake exempt from liability.  For this additional and independent reason, summary judgment in Synchrony's favor is warranted.

**E.      Grube's Truth-in-Lending-Act Claims Fail as a Matter of Law**

Grube asserts that Synchrony violated (1) three timing requirements under the Truth in Lending Act ("TILA") (16 U.S.C. § 1601 *et seq.*)—more specifically the Fair Credit Billing Act ("FCBA")— and implementing Regulation Z (12 C.F.R. § 1026), Compl. ¶¶ 54–56, and (2) "15 U.S.C.A. § 1643 in attempting to collect the unauthorized charges from the Plaintiff," Compl. ¶ 57.  Synchrony is entitled to summary judgment on these claims for the many reasons below.[11]

**1.      Grube's Claims Based on TILA Timing Requirements Fail**

**a.      Grube Did Not Provide Written Notice Necessary to Trigger the Timing Requirements of the TILA**

Grube contends that Synchrony violated TILA provisions governing billing disputes by allegedly (1) failing to acknowledge receipt of her "billing error notice" within 30 days, 12

---

[11] Although Grube's Complaint alleges that "Defendants" violated the TILA, her allegations relate solely to her communications with Synchrony.  Compl. ¶¶ 53-55.  Further, Amazon is not a "creditor" subject to the TILA's requirements.  *See* 15 U.S.C. § 1602(g).

C.F.R. § 226.13(c)(1); (2) failing to investigate and inform Grube of resolution of the dispute within 90 days, 12 C.F.R. § 226.13(c)(2); and (3) violating 12 C.F.R. § 226.13(d) by "attempting to collect the disputed amount [before] the billing error dispute had been resolved."  Compl. ¶¶ 53–56.  As a threshold matter, all three claims fail as a matter of law because Grube did not provide a *written* billing error notice necessary to trigger obligations for Synchrony.

The plain language of the FCBA and Regulation Z specifically requires *written* notice of a billing error.  *See* 15 U.S.C. § 1666(a) (requiring "[w]ritten notice by obligor to creditor"); 12 C.F.R. § 226.13(b) ("[a] billing error notice is a written notice").  Courts have uniformly held that failure to provide written notice of a billing dispute under the FCBA is fatal.  *See, e.g.*, *Maranto v. CitiFinancial Retail Servs., Inc.*, 448 F. Supp. 2d 758, 761 (W.D. La. 2006) ("[F]or Section 1666 to be triggered, the creditor must receive written notice."); *Krieger v. Bank of Am.*, N.A., No. 4:16-CV-00830, 2017 WL 168161, at *4 (M.D. Pa. Jan. 17, 2017) (dismissing FCBA claim where notice of billing error was by telephone); *Brown v. Capital One Bank (USA), N.A.*, No. 15-60590-CIV, 2015 WL 12712062, at *3 (S.D. Fla. June 19, 2015) (dismissing claim because "back-and-forth telephone calls, . . . and eventual letters from Plaintiff" did not satisfy FCBA's written-notice requirement).  Synchrony's credit card statements, in fact, informed Grube that "[t]elephoning about billing errors will not preserve your rights under federal law.  To preserve your rights, please write to our Billing Inquiries Address."  Koehler Decl. Ex. A.

Grube failed to provide written notice to Synchrony of the alleged billing error; all of her communications with Synchrony were by telephone.  Statement of Facts ¶¶ 28, 30.  Synchrony is, therefore, entitled to summary judgment on Grube's three FCBA-timing-requirement claims.

### b.   Grube's Claims Are Meritless in Any Event

Even had she provided timely written notice, Grube's claims under 12 C.F.R. § 226.13 fail as a matter of law.  *First*, TILA's one-year statute of limitations, 15 U.S.C. § 1640(e), bars her claim that Synchrony failed to acknowledge receipt of her alleged billing error notice of February 21, 2015.  Grube filed her Complaint on April 6, 2016 (Dkt. No. 1), more than one year

21

after the alleged failure to acknowledge receipt within 30 days (i.e., by March 23, 2015). *Second*, Grube's later communications were reassertions of the same billing error (i.e., the same Disputed Charges) and therefore did not impose additional obligations on Synchrony. *See* 12 C.F.R. § 226.13(h). *Third*, Synchrony complied with the timing requirements, in any event.[12]

### 2. Grube's Claim That Synchrony Violated 15 U.S.C. § 1643 Also Fails

#### a. 15 U.S.C. § 1643 Does Not Provide Cardholders a Cause of Action

Grube alleges that Synchrony "failed to comply with 15 U.S.C.A. § 1643 in attempting to collect the unauthorized fraudulent charges from the Plaintiff." Compl. ¶ 57. As a threshold matter, the claim fails because, although section 1643 places limitations of liability on cardholders for unauthorized use of a credit card, it does not provide a private cause of action for cardholders to seek damages or reimbursement of payments. In fact, it refers only to an "action by a card issuer to enforce liability for the use of a credit card." 15 U.S.C. § 1643(b). Although the First Circuit has not addressed the issue, the Third Circuit has held that the plain meaning of the statute does not provide a cardholder a private cause of action. *See Azur v. Chase Bank, USA, Nat'l Ass'n,* 601 F.3d 212, 217 (3d Cir. 2010) ("[T]he statute's plain meaning places a ceiling on a cardholder's obligations under the law and thus limits a card issuer's ability to sue a cardholder to recover fraudulent purchases. The language of § 1643 does not, however, enlarge a card issuer's liability or give the cardholder a right to reimbursement."); *Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 175 (3d Cir. 2008) ("Indeed, § 1643 does not address, nor is it even concerned with, the liability of an Issuer or any party other than the cardholder for unauthorized charges on a credit card."); *Krieger v. Bank of Am.,* N.A., No. 4:16-CV-00830, 2017 WL 168161, at *5 (M.D. Pa. Jan. 17, 2017) (15 U.S.C. § 1643 "does not provide cardholders with a cause of action").

---

[12] Synchrony denied Grube's initial claim on April 24, 2015 (within 90 days and two-complete billing cycles of her February 21, 2015 call). Koehler Decl. ¶¶ 7, 11 & Ex. C. After Grube reasserted the same claim on June 1, 2015, Synchrony sent her a written acknowledgement on June 4, 2015 and, after investigating her claim a second time, sent Grube a letter denying her claim on August 16, 2015 (again within 90 days and two complete billing cycles). Koehler Decl. ¶¶ 13–16 & Exs. D, E.

Based on the statutory text and the sound analysis by the Third Circuit, this Court should grant summary judgment in favor of Synchrony on Grube's claim based on 15 U.S.C. § 1643.

**b.     The Disputed Charges Were Authorized**

Grube's claim that Synchrony violated 15 U.S.C. § 1643 also fails as a matter of law even if the TILA provides cardholders with a private cause of action.  Assuming for purposes of this motion that Grube did not actually or impliedly authorize the Disputed Charges, she is still liable for them because they were incurred by someone with apparent authority.

Section 1643(a)(1) limits a cardholder's liability for "unauthorized use of a credit card," which is defined as "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit," 15 U.S.C. § 1602(p); 12 C.F.R. § Pt. 226, Supp. I ("Whether such authority exists must be determined under state or other applicable law.").  Grube's account agreement provides that Utah law governs to the extent state law applies.  Koehler Decl. Ex. B ("Governing Law").

A person acts as an agent with apparent authority, binding the principal, "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  *Burdick v. Horner Townsend & Kent, Inc.*, 345 P.3d 531, 539 (Utah 2015).  Thus, "an analysis of apparent authority focuses on the acts of the principal from a third party's perspective."  *Diston v. EnviroPak Med. Prod., Inc.*, 893 P.2d 1071, 1076 (Utah Ct. App. 1995).  Utah courts apply a three-part test to assess whether apparent authority is present:

> (1) that the principal has manifested his [or her] consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority;
>
> (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and
>
> (3) that the third person, relying on such appearance of authority, has changed his [or her] position and will be injured or suffer loss

> if the act done or transaction executed by the agent does not bind
> the principal.

*Id.* All three prongs are satisfied in this case.[13]

*First*, Grube manifested her consent to the exercise of apparent authority by accepting Amazon's Conditions of Use, under which she "agree[d] to accept responsibility for all activities that occur under [her] account and password," Statement of Facts ¶¶ 5–7; Luebbers Decl. ¶ 8 & Ex. G ("Your Account"); and by linking her Amazon account to her Fire Tablet devices, which she knew were capable of making purchases from the Appstore that would be charged to her Credit Card Account, Statement of Facts ¶ 7.

*Second*, Amazon (and Synchrony through Amazon) knew of these manifestations and reasonably believed that the Disputed Charges were authorized, in light of Amazon's robust password and other protections (such as immediate email order confirmations) to protect against unauthorized purchases, Statement of Facts ¶¶ 11.a–11.i, 21–23, and the fact that a significant majority of the 72 Disputed Charges required entry of Grube's chosen password, Statement of Facts ¶ 15.  Indeed, Amazon and Synchrony had no way of knowing otherwise, since the very purpose of a password is to demonstrate the account holder's authorization, and Grube took no action despite receiving the more than 100 email notifications of the Disputed Charges and Unbilled Challenged Orders.  Statement of Facts ¶ 16; *see Azur*, 601 F.3d at 221–22 (finding apparent authority and holding that negligent omissions by cardholder can lead party to reasonably conclude that charges were authorized).  Synchrony's decision to reject Grube's fraud claim was also reasonable because its investigation confirmed that the Disputed Charges were incurred on Grube's Fire Tablet, which contradicted Grube's repeated claims that she was the victim of fraudulent charges made by a stranger.  *See* Statement of Facts ¶¶ 28–35.

---

[13] The same analysis holds if Washington agency law applies based on the choice-of-law provision in Amazon's Conditions of Use.  *See Mohr v. Grantham*, 262 P.3d 490, 498 (Wash. 2011) ("Under apparent authority, an agent (e.g., a doctor) binds a principal (e.g., a hospital) if objective manifestations of the principal 'cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal' and such belief is objectively reasonable.") (quoting *King v. Riveland,* 886 P.2d 160 (Wash. 1994)).

*Third*, Amazon and Synchrony, relying on the apparent authority to make the disputed in-app purchases on Grube's Fire Tablet, would suffer injury (lost revenue) if the charges were reversed.  Because the Disputed Charges were incurred with apparent authority, Synchrony is entitled to summary judgment on Grube's claim under 15 U.S.C. § 1643.

Finally, Grube's claim fails for the independent reason that unauthorized use also requires that "the cardholder receives no benefit."  *See* 15 U.S.C. § 1602(p).  Here, the Disputed Charges were in-app purchases downloaded to one of Grube's Fire Tablets for use within games played by her son.  Statement of Facts ¶¶ 15, 24–25.  These purchases enhanced the apps played by Grube's son, and thus Grube received a benefit and the charges do not qualify as unauthorized.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Amazon's and Synchrony's Motion for Summary Judgment.

<div style="margin-left: 40%;">

Respectfully submitted,
Synchrony Bank and Amazon.com

By their attorneys,

**THE STEIN LAW FIRM, PLLC**

</div>

Date:  May 8, 2017                    By: /s/ Robert A. Stein
                                      Robert A. Stein
                                      Bar ID #2438
                                      PO Box 2159
                                      Concord NH 03302-2159
                                      (603) 228-1109

                                      **PERKINS COIE LLP**
                                      Harry H. Schneider, Jr. (*pro hac vice*)
                                      Jeffrey M. Hanson (*pro hac vice*)
                                      1201 Third Avenue, Suite 4900
                                      Seattle, WA  98101-3099
                                      (206) 359-8000

<div style="text-align: center;">

25

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2017, a copy of the foregoing document was filed electronically using the Court's CM/ECF system.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

/s/ Jeffrey M. Hanson
Jeffrey M. Hanson

26