UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Carrie Grube

   v.                                         Civil No. 16-cv-126-LM
                                                               Opinion No. 2017 DNH 179

Amazon.com, Inc., et al.

## **O R D E R**

In early 2015, Carrie Grube discovered that her credit card had been charged more than $2,500 for in-app purchases made on her children's Amazon Kindle Fire devices. After unsuccessfully disputing the charges with her credit card issuer, Synchrony Bank ("Synchrony"), Grube brought suit against Synchrony and Amazon.com, Inc. ("Amazon") for violations of state and federal law. Defendants now move for summary judgment on all claims. Grube objects and moves for summary judgment on her federal claim against Synchrony. For the reasons that follow, the court grants defendants' motion and denies Grube's motion.

**STANDARD OF REVIEW**

Cross motions for summary judgment proceed under the same standard applicable to all motions for summary judgment, but the motions are addressed separately. Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014). A movant is entitled to summary judgment if it "shows that there is no

genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## BACKGROUND

Amazon operates an Appstore, in which customers can view and download applications to use on smartphones and Amazon's Kindle Fire tablets. Within certain applications, users can make "in-app purchases" to enhance an application. See doc. no. 25-2 at ¶ 2.

I.  Amazon's In-App Purchasing System

In 2011, when Amazon first implemented its in-app purchasing system, children could make in-app purchases without parental consent and without inputting a password.[1] Between 2011 and June 2014, Amazon made changes to its in-app purchasing

---

[1] A different federal lawsuit against Amazon which predates this case provides important factual context here. See FTC v. Amazon.com, Inc., No. C14-1038-JCC, 2016 U.S. Dist. LEXIS 55569 (W.D. Wash. Apr. 26, 2016). As a result of that lawsuit, Amazon made significant changes to its in-app purchasing protections. Id. at *6-7. All of the changes predated the facts in this case, and Grube does not dispute the description of Amazon's in-app purchasing protections as set forth in that court's April 26, 2016 order. For this section of its factual summary, the court draws heavily from the facts described in that order.

system, including requiring passwords before certain in-app purchases, adding parental control features, and providing better notice in its Appstore interface about in-app purchasing. Then, in June 2014, Amazon implemented a refined first-time purchase prompt that required account holders both to enter their password before making the first in-app purchase on a device and to select whether they would like to require a password for future in-app purchases.

In July 2014, the Federal Trade Commission ("FTC") brought suit against Amazon, challenging its in-app purchasing system dating back to November 2011. See Amazon.com, 2016 U.S. Dist. LEXIS 55569, at *7. The Western District of Washington held that Amazon's in-app purchasing system and billing practices between November 2011 and June 2014 violated the FTC Act. The court concluded that during that period, customers were charged for in-app purchases that were made without their authorization. The court concluded that Amazon's unfair billing practices continued until June 3, 2014, when Amazon made changes to the in-app purchasing prompts that "clearly informed [users] both about the existence of in-app purchases and the scope of their consent . . . ." Id. at *23-24.

II.  Facts Related to Plaintiff's Case

In late 2014, after Amazon had instituted the changes to its in-app purchasing protections, Carrie Grube purchased two Amazon Kindle Fire HD tablets: one for her nine-year old son and the other for her five-year-old daughter.  She registered the Kindle devices with her Amazon account.  As part of the registration process, Grube agreed to Amazon's "Conditions of Use," which governs use of the Appstore on each Kindle.  Grube linked her Amazon-branded credit card, issued by Synchrony, as the method of payment for her Amazon account.  Grube created a password for purchases on each Kindle device and did not share those passwords with her children.  The password for her son's Kindle was the four digit combination of the month and date of his birthday.

At the time Grube purchased the Kindle devices, Amazon had instituted the following safeguards to protect against unauthorized purchases:

- First-Time Purchase Prompt: When a user attempts to complete an in-app purchase on a Kindle device for the first time, she is prompted to enter the Amazon password associated with the device.  Additionally, the user is prompted to make an affirmative choice whether to require the password for all future in-app purchases, which enables a Parental Controls feature.

- Parental Controls: Amazon account holders can enable the Parental Controls feature on the Kindle at any time in the device settings menu.  With Parental Controls

enabled, a Parental Controls password is required for all in-app purchases.

- <u>Disable In-App Purchasing</u>: Users can disable in-app purchasing on a Kindle altogether through the Parental Controls menu.

- <u>High-Price Password</u>: Even if Parental Controls is disabled on a device, all in-app purchases of $19.99 or more require successful entry of the account holder's password.

- <u>Password for Specified Apps</u>: Certain apps that have been designed for use by children require a password for in-app purchases.  Once the customer enters a password for an in-app purchase, a 15-minute purchasing window opens in which purchases can be made without additional password entry.

- <u>High-Frequency Password</u>: Password entry is required when a customer attempts to make a second in-app purchase within a five-minute period.  Entering the account password opens a 60-minute purchasing window.

- <u>Notice About In-App Purchases</u>: For apps that allow in-app purchasing, the app details page in the Amazon Appstore lists "In-App Purchasing" under the "Key Details" heading and contains the following information: "NOTE: This app contains in-app purchasing, which allows you to buy items within the app using actual money.  On Amazon devices, you can configure parental controls from the device Settings menu by selecting Parental Controls."  Doc. no. 25-5.

- <u>Immediate Order-Confirmation Emails</u>: After each in-app purchase, Amazon sends an immediate order-confirmation email to the email address associated with the user's Amazon account.

Between December 2014 and February 2015, Grube occasionally made small game purchases for her children on the Kindles.  In February 2015, Grube reviewed the billing statement for her Amazon credit card account and noticed charges in the amount of

5

$2,574.87 that she claims were unauthorized.  The disputed charges were for 72 in-app purchases that were made from and downloaded to her Kindle devices.  It is unclear whether Grube had enabled Parental Controls on the Kindle devices.  If she had, then each in-app purchase would have required successful entry of the device password.  If she had not, then 52 of the 72 purchases would have still required the password because of other safeguards Amazon provides.

The majority of these in-app purchases were made within two sports-related apps—MyNBA2K15 and WWE SuperCard.  Grube concedes that "[w]restling is something my son is interested in" and acknowledges that he could have made the disputed purchases.  Doc. no. 25-22 at 53 of 71.  Indeed, Grube admits that she cannot think of anyone other than her son who could have made the in-app purchases.  Id.  Grube received an immediate confirmation email from Amazon after each of the disputed in-app purchases, but she never reviewed these emails because she no longer used that particular email account.

On February 21, 2015, Grube called Synchrony to dispute the charges on her Amazon credit card billing statement.  She notified Synchrony that she had not authorized the charges in question.  Grube informed Synchrony that she had not used the credit card since December 2014 and expressed concern about

6

potential identity theft. Synchrony investigated Grube's claim and determined that the charges were for digital downloads on her own Kindle devices. Synchrony determined that Grube had authorized the charges because she released her credit card information to a third party by linking the card to her Kindle devices that she provided to third parties. On April 24, 2015, Synchrony mailed Grube a letter informing her that it had denied her fraud claim for that reason, though Grube claims that she never received the letter.

Grube contacted Synchrony again on June 1, 2015 to dispute the charges. Synchrony re-investigated her fraud claim and again determined that the charges were authorized. In September 2015, Grube filed a complaint with the Better Business Bureau, contending that the charges to her Amazon credit card were fraudulent. Synchrony opened a fraud investigation for the third time. In November 2015, Synchrony again denied Grube's fraud claim after confirming with Amazon that the disputed charges were for digital downloads to one or more Kindles labeled "Carrie's Fire." Doc. no. 25-19 at 3 of 4.

On December 15, 2015, Synchrony sent a letter to the Better Business Bureau, copying Grube, stating its conclusion that the charges were neither fraudulent nor unauthorized and that the purchases "may have been downloaded by someone that was given permissible use of the device." Doc. no. 25-18 at 5-6 of 9.

7

The letter further suggested that a "comparison can be done between the device, her Amazon.com account, and her Synchrony Bank billing statement to confirm the validity of what is on the device."  Id. at 5.  In April 2016, Grube filed suit against Amazon and Synchrony.

**DISCUSSION**

Grube alleges that Amazon violated the New Hampshire Consumer Protection Act ("CPA"), RSA 358-A:2 (Count II) and breached the duty of good faith and fair dealing (Count IV) by enticing children to make in-app purchases.  She alleges that Synchrony violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1643 (Count I) and the New Hampshire Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA"), RSA 358-C:3, VII (Count III) in attempting to collect unauthorized credit card charges.[2]  Defendants move for summary judgment on all four claims.  Grube moves for partial summary judgment on Count I.  The court deals first with the claims against Amazon and then addresses the claims against Synchrony.

---

[2] Although the complaint asserts all four counts against the defendants generally, it is clear from the allegations in the complaint and Grube's subsequent pleadings that Counts I and III are asserted against Synchrony only, while Counts II and IV are brought only against Amazon.

I.   **Claims Against Amazon**

A. <u>Violation of the CPA, RSA 358-A:2 (Count II)</u>

Grube alleges that Amazon violated the CPA by enabling children to make purchases on Kindle devices without the credit card holder's authorization.

The CPA makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2. "Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to," certain listed commercial actions. Id. In determining which commercial actions "not specifically delineated" are covered by the CPA, the New Hampshire Supreme Court employs "the 'rascality test.'" Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 675 (2013). "Under the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." Id. at 675-76 (internal quotation marks and citation omitted). The New Hampshire Supreme Court looks to "federal courts' interpretation of the Federal Trade Commission Act for guidance" to determine what actions are unlawful. State v. Moran, 151 N.H. 450, 452-53 (2004) (citing RSA 358-A:13).

Grube challenges Amazon's billing practices with respect to in-app purchases. Unlike the in-app purchasing system that the

9

Western District of Washington found violated the FTC Act, the Kindle devices Grube purchased for her children provided the extensive protections listed supra at 4-5 to prevent unauthorized transactions. And, the events relevant to Grube's case occurred in early 2015—after Amazon's revised first-time purchase prompt was in place. Thus, before the first in-app purchase occurred on Grube's Kindle devices, Amazon required Grube to enter her password and select whether to require a password for all future in-app purchases.

   Grube complains that Amazon's in-app purchasing protections violate the CPA by "plac[ing] the burden on the consumer to anticipate potential issues, and plac[ing] the burden on the consumer to try to enable those features." Doc. no. 29-1 at 3-4. Grube was prompted to make an affirmative choice with respect to passwords and in-app purchases before she could ever make in-app purchases on the devices; responding to this automatic prompt places only a minimal burden on the account holder and the prompt is designed to protect the account holder. Moreover, Amazon now offers parental control settings and the ability to disable all in-app purchases, giving parents like Grube the tools to prevent their children from making in-app purchase without their knowledge and consent. Viewing the evidence in the light most favorable to Grube, no rational jury

could find that Amazon's actions in this case come close to anything that might resemble "rascality."  Axenics, 164 N.H. at 675-76.  Accordingly, Amazon is entitled to summary judgment on Count II.

B. Duty of Good Faith and Fair Dealing (Count IV)

In Count IV, Grube alleges that Amazon breached the duty of good faith and fair dealing because it enticed minor children to download "bait applications and games" and spend "game currency" without parental knowledge or permission.  She ties her claim to Amazon's Conditions of Use, the contract governing Grube's account and her use of Amazon services on her Kindles.  Grube contends that New Hampshire law governs her good faith and fair dealing claim, while Amazon argues that the claim arises under Washington law.  The court need not decide that question, however, because Grube's claim fails under the substantive law of both states.  See Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993).

Under Washington law, "'[t]here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'"  Rekhter v. Dep't of Soc. & Health Servs., 323 P.3d 1036, 1041 (Wash. 2014) (quoting Badgett v. Sec. State Bank, 807 P.2d 356, 360 (Wash. 1991)).  The duty,

11

however, does not "inject substantive terms into the parties' contract." Badgett, 807 P.2d at 360. Rather, the duty "requires only that the parties perform in good faith the obligations imposed by their agreement." Id. Accordingly, the duty is not "free-floating," but "exists only in relation to performance of a specific contract term." Id.

Grube asserts that, to the extent the court determines that her good faith and fair dealing claim arises under Washington law, her claim relates to Amazon's performance of the following term in Amazon's Conditions of Use: "Amazon does sell products for children, but it sells them to adults, who can purchase with a credit card or other permitted payment method." Doc. no. 25-9 at 3 of 7. Grube has presented no evidence that Amazon acted in bad faith in carrying out any obligations under that provision. Because children use Kindle devices, there are opportunities for them to make in-app purchases. But, as described above, Amazon provides ample safeguards to ensure that children only make in-app purchases with an adult's permission. As Amazon provided Grube with the tools to prevent her children from making unauthorized in-app purchases, Amazon did not violate the duty of good faith and fair dealing under Washington law.

Grube's claim fares no better under New Hampshire law. In New Hampshire, there is an implied covenant in every agreement "that the parties will act in good faith and fairly with one

12

another." Birch Broad, Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198 (2010). New Hampshire recognizes the implied covenant of good faith and fair dealing in three different contractual contexts: (1) contract formation, (2) termination of at-will employment agreements, and (3) limitation of discretion in contractual performance. J & M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 724 (2011). Grube invokes the third category here. Whether a plaintiff has sufficiently alleged a breach under this category turns on three questions: "(1) whether the agreement allows or confers discretion on the defendant to deprive the plaintiff of a substantial portion of the benefit of the agreement; (2) whether the defendant exercised its discretion reasonably; and (3) whether the defendant's abuse of discretion caused the damage complained of." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 129 (D.N.H. 2012) (internal quotation marks and citation omitted).

Grube contends that to the extent the court determines that her good faith and fair dealing claim arises under New Hampshire law, Amazon is liable because it exercised its broad contractual discretion "unreasonably . . . in ways which resulted in Plaintiff's suffering harm." Doc. no. 29-1 at 5. In support of her claim, Grube points to the following language in Amazon's Conditions of Use: "Amazon reserves the right to refuse service,

13

terminate accounts, remove or edit content, or cancel orders in its sole discretion."³ Doc. no. 25-9 at 3 of 7. That contractual term is, however, wholly unrelated to Grube's lawsuit. Grube does not allege anywhere in her complaint that Amazon unreasonably exercised its discretion to refuse service, terminate her account, or cancel an order. Rather, her allegations against Amazon deal with the Kindle's in-app purchasing system. There is no evidence that Amazon abused its contractual discretion in this case. As such, Amazon's actions do not give rise to a breach of the implied covenant of good faith and fair dealing under New Hampshire law.

Accordingly, Amazon is entitled to summary judgment on Count IV.

## II. Claims Against Synchrony

### A. Violation of TILA, 15 U.S.C. § 1643 (Count I)

In Count I, Grube brings a claim under TILA, 15 U.S.C. § 1643, alleging that Synchrony impermissibly denied her fraud claim.⁴ Grube contends that she is not liable for the in-app

---

³ Grube relies on different language in the Conditions of Use than that she cited supra at 12 with respect to the law of Washington.

⁴ Grube initially brought a second claim in Count I for violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, but she subsequently withdrew that claim. See doc. no. 29-1 at 7; doc. no. 42 at 2.

credit card purchases because she did not authorize the purchases and does not know who made them. "Congress enacted the credit card provisions of the Truth in Lending Act 'in large measure to protect credit cardholders from unauthorized use perpetrated by those able to obtain possession of a card from its original owner.'" DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co., Inc., 388 F.3d 886, 889 (D.C. Cir. 2004) (quoting Towers World Airways Inc. v. PHH Aviation Sys. Inc., 933 F.2d 174, 176 (2d Cir. 1991)). Except as otherwise provided in § 1643, "a cardholder incurs no liability from the unauthorized use of a credit card." 15 U.S.C. § 1643(d). "The protections under § 1643, however, apply only to 'unauthorized use,' . . . ." DBI Architects, 388 F.3d at 889.

The parties filed cross motions for summary judgment on this claim. Their dispute centers on Synchrony's conclusion that the credit card charges for in-app purchases were not unauthorized. Grube argues that the charges were unauthorized because she did not release her account information to any third parties or give anyone else permission to make purchases on the Kindle devices. Synchrony argues that the charges were authorized because the in-app purchaser had apparent authority to make the purchases.[5]

---

[5] Synchrony also argues that 15 U.S.C. § 1643 does not provide cardholders with a private cause of action to seek

The parties agree that the court should rule on this issue as a matter of law because the material facts are not in dispute.  Although questions of apparent authority are typically fact-laden, courts can resolve them at summary judgment where, as here, facts are undisputed.  See, e.g., Ophthalmic Surgeons, Ltd. v. Paychex, Inc., 632 F.3d 31, 37 (1st Cir. 2011); Minskoff v. Am. Express Travel Related Servs. Co., Inc., 98 F.3d 703, 708-09 (2d Cir. 1996); Ocor Prods. Corp. v. Walt Disney Prods., Inc., 682 F. Supp. 90, 93 (D.N.H. 1988).

Congress defined "unauthorized use" as "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit."  15 U.S.C. § 1602(p).

> Courts have concluded that Congress intended agency law to govern whether use by someone other than the cardholder was authorized, DBI Architects, 388 F.3d at 890; Towers World Airways Inc. v. PHH Aviation Sys. Inc., 933 F.2d 174, 176-77 (2d Cir. 1991), and in its commentary to Regulation Z, the Federal Reserve Board has made explicit that "whether authority exists must be determined under state or other applicable law," Federal Reserve Board Truth in Lending Official Staff Commentary to Regulation Z, 12 C.F.R. pt. 226, Supp. I § 226.12(b)(1).

---

reimbursement of payments or damages from a credit card issuer. See Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 217 (3d Cir. 2010).  Without controlling authority on the issue, and following the approach taken by the majority of courts that have addressed the issue, the court assumes, without deciding, that a cardholder can maintain a cause of action under § 1643 against a card issuer.  See, e.g., Asher v. Chase Bank USA, N.A., 310 F. App'x 912, 916 (7th Cir. 2009).

Asher, 310 F. App'x at 920. Here, the parties dispute whether New Hampshire or Utah agency law governs the issue of apparent authority. The issue is immaterial, however, as the court's agency analysis is the same under either New Hampshire or Utah law. See Lambert, 983 F.2d at 1114.

Under both Utah and New Hampshire law, apparent authority exists when the conduct of a principal causes a third party to reasonably believe that an agent has authority to act on behalf of the principal. See, e.g., Grazer v. Jones, 289 P.3d 437, 440 (Utah 2012); Boynton v. Figueroa, 154 N.H. 592, 604 (2006). The principal's manifestations of apparent authority need not be communicated directly to the third-party. See Restatement (Third) of Agency § 3.03, cmt. b (2006) ("A principal may make manifestations regarding an agent's authority in many ways. . . . [A]n indirect route of communication between a principal and third party may suffice, especially when it is consistent with practice in the relevant industry."). While in-app purchasing provides a unique paradigm for agency law, the facts of this case lend itself to such an analysis.

Here, Synchrony concluded that the in-app purchases on Grube's Kindles were made by someone who was authorized to do so. That is, the actions of the principal (Grube) demonstrated that the agent (the person who made the in-app purchases on the Kindle devices) had the authority to act on behalf of the

17

principal (Grube). Thus, to determine if apparent authority existed here, the court must decide whether, construing all facts in the light most favorable to Grube, Synchrony's conclusion was reasonable.

The record evidence shows that Synchrony conducted multiple investigations of the facts underlying Grube's claims of fraud. Each investigation yielded the same result: the charges appeared authorized by Grube. Synchrony determined that the disputed charges were all in-app purchases made from and downloaded to Grube's own Kindle devices. Grube voluntarily provided her credit card information to Amazon for purchases from these Kindles, and linked these devices to her Amazon account. In other words, Grube voluntarily provided her credit card information to Amazon for purchases from these Kindles. Knowing that in-app purchases could be made on the devices, Grube then voluntarily gave the Kindles to her children. Although Grube asserted that the in-app purchases were fraudulent, she did not claim that the Kindles were lost or stolen. Cf. Towers, 933 F.2d at 177 (TILA "precludes a finding of apparent authority where the transfer of the card was without the cardholder's consent, as in cases involving theft, loss, or fraud").

Viewing those facts in the light most favorable to Grube, no rational jury could find that Synchrony's conclusion (i.e., that the in-app purchases were made by someone with the

authority do so) was anything but reasonable.  Thus, the undisputed facts show that the in-app purchaser had apparent authority to purchase the apps.

Accordingly, Synchrony is entitled to summary judgment on Grube's TILA claim.

### B. Violation of UDUCPA, RSA 358-C:3, VII (Count III)

Finally, Grube alleges that Synchrony violated RSA 358-C:3, VII, in sending out credit card billing statements that contained unauthorized charges.  Under RSA 358-C:3, VII, it is unlawful for a debt collector to "[m]ake[] any material false representation or implication of the character, extent or amount of [a] debt, or of its status in any legal proceeding."  Grube contends that because certain credit charges were fraudulent, Synchrony's billing statements showing those charges constitute "material false misrepresentations as to the character and amount of Plaintiff's debt."  Doc. no. 1 at ¶ 73.

Grube's UDUCPA claim hinges on the success of her TILA claim.  She argues:

> Pursuant to 15 U.S.C. §1643, Plaintiff is not liable for the charges which she did not authorize, therefore, the billing statements attempting to collect the debt for unauthorized charges contain false information.

Doc. no. 29-1 at 7.

Because Grube's TILA claim fails, her UDUCPA claim must also fail. As explained above, Synchrony acted reasonably in determining that Grube authorized the disputed credit card charges. As such, Synchrony was entitled to collect the debt for those charges. Synchrony made no misrepresentations as to the character or amount of Grube's credit card debt. Accordingly, Synchrony is entitled to summary judgment on Count III.

**CONCLUSION**

For the foregoing reasons, Grube's motion for partial summary judgment (doc. no. 24) is **DENIED** and defendants' motion for summary judgment (doc. no. 25) is **GRANTED**. All pending motions are **DENIED** as moot. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 6, 2017

cc: Kristina Cerniauskaite, Esq.
    Jeffrey M. Hanson, Esq.
    Harry H. Schneider, Jr., Esq.
    Robert A. Stein, Esq.